UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JAMES KOSKAN AND TRESLYN KOSKAN,** through their daughter and attorney-in-fact Laurie Biagini, individually and as a class representative, | : : : : Case No. : |
| Plaintiff, | : |
| v. | : **JURY TRIAL DEMANDED** |
| **CONTINENTAL CASUALTY COMPANY**, | : : |
| Defendant. | : |

## CLASS ACTION COMPLAINT

### PRELIMINARY STATEMENT

1. James Koskan and Treslyn Koskan ("Plaintiffs"), through their daughter and attorney-in-fact Laurie Biagini, individually and on behalf of all those similarly situated, brings this action against Defendant Continental Casualty Company ("Defendant" or "CNA" or "Continental") for denying Plaintiffs' claims for home health care coverage while staying at an assisted living facility (termed an Alternate Care Facility ("ACF") in the policy) because, according to CNA, the Plaintiffs' policy does not provide coverage for both an ACF stay and a Home Care Visit claim simultaneously.

2. The long-term care insurance policies at issue do not expressly state that charges for Home Care Visits, which families often use to supplement the care offered by ACF staff, cannot be paid concurrently with an ACF claim.

3. Indeed, nothing in the policies suggests that ACF and Home Care Visit claims are mutually exclusive.

4. In contrast, the policies expressly **do** provide that Nursing Facility and ACF claims are mutually exclusive. If CNA intended for ACF benefits and Home Care Visit benefits to be mutually exclusive, then it easily could have drafted the policies to say just that. But CNA did not.

5. Plaintiffs bring this putative class action on behalf of themselves and all other similarly situated CNA long-term care insurance policyholders and makes these allegations based upon their personal knowledge as to their own facts and upon information and belief as to all other matters.

## PARTIES

6. James Koskan and Treslyn Koskan are a married couple residing in The Glenn assisted living facility in Hopkins, Minnesota, since 2016. The Koskans each own a CNA issued long-term care insurance policy, form P1-21295-A22, which have effective dates of July 10, 1996. *See* Exhibit A. Plaintiffs are citizens of Minnesota.

7. Defendant issued substantially similar long-term care insurance policies to Plaintiffs and all similarly situated policyholders.

8. Defendant is incorporated in Delaware and maintains its principal place of business in Illinois.

**JURISDICTION & VENUE**

9. This Court has original diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5,000,000 exclusive of interest and costs and is a class action in which members of the putative Classes are citizens of a State different from the Defendant. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000 exclusive of interest and cost and Defendant and Plaintiffs are citizens of different states.

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District and Defendant is headquartered in Chicago, Illinois.

**FACTS**

11. As individuals age, there often comes a time when they can no longer live safely on their own and need to move into a long-term care facility due to physical and/or cognitive limitations. CNA has sold tens of thousands of long-term care insurance policies for the purpose of assisting individuals to cover the costs of such care.

12. One of the principal benefit types afforded by CNA's long-term care insurance policies is the Alternate Care Facility benefit ("ACF Benefit"). This benefit is utilized to cover costs associated with an assisted living facility stay. The ACF Benefit generally requires CNA to pay for incurred expenses charged by an assisted living facility up to a maximum scheduled amount per day – the Maximum Daily Facility Benefit – for each day the policyholder stays and receives qualifying care at an eligible ACF.

13. Another principal benefit under CNA's long-term care insurance policies is the Home Care Visit benefit which covers charges for nursing, medical social workers, home health

aides, and even homemaker services. These charges are covered up to a maximum scheduled amount per day – the Maximum Home and Adult Day Care Benefit.

14. For discrete periods in 2020 and 2021, Plaintiffs, individually, received home health services associated with specific care needs due to an injury or need for supervision.

15. However, on December 14, 2021, following a nursing assessment that determined consistent daily care was needed, Plaintiffs began receiving the ACF Benefit from CNA under their policies for an assisted living facility stay at The Glenn facility.

16. For a few weeks starting on January 23, 2022 and then consistently beginning on July 7, 2022, Plaintiffs started receiving daily home health services from a provider hired directly by Plaintiffs outside of The Glenn. Due to Plaintiffs' balance issues and general weakness, as well as Mr. Koskan's advanced dementia, Plaintiffs are at a high risk for falls and significant injury. Accordingly, the outside provider comes to The Glenn and provides supervision with all mobility and transfers, cuing for use of walkers, escorting to meals and activities, and direct hands-on care related to meals, among other care. This outside care supplements the care provided to Plaintiffs by The Glenn's staff, and is paid for by Plaintiffs separate and apart from the charges billed by The Glenn.

17. To seek coverage for the cost associated with these services, Plaintiffs filed a claim for coverage of the home care charges under their Home Care Visit benefit. The relevant policy definitions are as follows:

| | |
|---|---|
| **HOME CARE VISIT** | A visit to Your Home Convalescent Unit by a provider of Prescribed Long-Term Care from a Home Health Care Agency for the delivery of Prescribed Long-Term Care. |
| **HOME HEALTH CARE AGENCY** | An entity which provides Prescribed Long-Term Care and: 1. certified for participation in the Medicare program; or 2. is licensed as a Home Health Care Agency where state licensing exists, or is otherwise acceptable to us if licensing is not required. For purposes of this policy, a registered nurse, a licensed practical nurse, or a licensed vocational nurse operating within the scope of his or her license will be considered a Home Health Care Agency. |

Exhibit A at 8.

| | |
|---|---|
| **PRESCRIBED LONG-TERM CARE** | A service, type of care, or procedure that (1) could not be omitted without adversely affecting Your illness or condition and (2) is specified in a Plan of Care. |

Exhibit A at 7.

18. There is no dispute that Plaintiffs home care provider is a Home Health Care Agency providing Prescribed Long-Term Care to Plaintiffs. The sole dispute here is whether The Glenn, or any other ACF, can be both an ACF and also a Home Convalescent Unit at the same time.

19. CNA denied coverage of the Home Care Visit charges on the grounds that an ACF and a "Home Convalescent Unit" are mutually exclusive and "very different and distinct settings[.]" *See* Exhibit B at 4.

5

20. CNA's position is that Home Care Visit charges will only be covered if the care is rendered in a Home Convalescent Unit and, according to CNA, a facility that qualifies as an ACF cannot be a Home Convalescent Unit.

21. However, the plain language of the CNA insurance policies at issue does no support CNA's position.

22. Home Convalescent Unit is defined by the policies as:

**HOME CONVALESCENT UNIT**
1. Your home;
2. a private home;
3. a home for the retired or aged;
4. a place which provides residential care; or
5. a section of a nursing facility providing only residential care.

It does not mean a hospital.

Exhibit A at 8.

23. Alternate Care Facility is defined as:

| ALTERNATE CARE FACILITY<br><br>*The Celeon Assated L.* | A facility that is engaged primarily in providing ongoing care and related services to inpatients in one location and meets all of the following criteria:<br><br>1. provides 24 hour a day care and services sufficient to support needs resulting from inability to perform Activities of Daily Living or Cognitive Impairment; and<br>2. has a trained and ready to respond employee on duty at all times to provide that care; and<br>3. provides 3 meals a day and accommodates special dietary needs; and<br>4. is licensed or accredited by the appropriate agency to provide such care; and<br>5. has formal arrangements for the services of a physician or nurse to furnish medical care in case of emergency; and<br>6. has appropriate methods and procedures for handling and administering drugs and biologicals.<br><br>An Alternate Care Facility does not mean a Nursing Facility, hospital or clinic, boarding home, a place which operates primarily for the treatment of alcoholics or drug addicts, or a hospice. However, care or services provided in these facilities may be covered subject to the conditions of the Alternate Plan of Care Benefit provision. |
|---|---|

Exhibit A at 9.

24. Nursing Facility is defined as:

7

| NURSING FACILITY | 1. A facility that is licensed as a nursing home under the applicable state licensing laws; |
|---|---|
| | 2. A facility that is licensed as a boarding care home under the applicable state licensing laws and certified as an intermediate care facility for purposes of the medical assistance program; and |
| | 3. In states other than Minnesota, a facility that meets licensing and certification standards comparable to those that apply to the facilities described in clauses (1) and (2). |
| | A Nursing Facility does not mean a hospital or clinic, boarding home only, a place which operates primarily for the treatment of alcoholics or drug addicts, or a hospice. However, care or services provided in these facilities may be covered subject to the conditions of the Alternate Plan of Care Benefit provision. |

Exhibit A at 10.

25. In drafting the policies, CNA clarified that Nursing Facility and Alternate Care Facility are mutually exclusive: "An Alternate Care Facility does not mean a Nursing Facility…."

26. In addition, the definition of Home Convalescent Unit certainly includes private residences; however, it also specifically provides that long-term care facilities may qualify as a Home Convalescent Unit as well – "a place which provides residential care" and "a section of a nursing facility providing only residential care."

27. Assisted living facilities which are considered to be ACF's are certainly places which provide "residential care." CNA's denial letter to Plaintiffs even admits this fact:

> Your contention, essentially, is that any licensed facility that provides 24-hour care to inpatient residents and otherwise meets the requirements of an Alternate Care Facility, must *also* be a Home Convalescent Unit just because it offers some level of "residential care." Quite obviously, all facilities licensed by the state to provide 24-hour care to residents also provide room and board, as well as other residential services, such as housekeeping. However, it is simply not a feasible interpretation that these facilities are Home Convalescent Units because they provide both residential care and Prescribed Long Term Care to inpatient residents.

Exhibit B at 4.

28. CNA's black and white position that ACF's and Home Convalescent Units are distinct and therefore Home Care Visit benefits and ACF facility benefits cannot be collected concurrently contradicts the plain language of its policies.

29. Had CNA wanted to make ACF's and Home Convalescent Units mutually exclusive, it could have defined those terms accordingly. This is what CNA did to clearly demonstrate that ACF and Nursing Facilities are different facility types.

30. The fact that CNA defined Home Convalescent Unit to include "section[s] of a nursing facility" demonstrates that the parties fully intended for coverage to be afforded for Home Care Visits even in certain types of institutional care settings.

31. This is not surprising. Families very often pay outside providers to come in to assisted living facilities to supplement the facility care with personal one-on-one care from home health care providers. A professor from Brown University who studies the trend of home health care utilization at assisted living facilities has indicated that 40% of all assisted living residents may be receiving home health care service.[1]

32. Indeed, in what can only be described as a total contradiction, CNA considered The Glenn to be Plaintiffs' Home Convalescent Unit when calculating the elimination period prior to starting payment of the ACF benefit. *See* Exhibit B at 1 ("Upon review, however, CCC agrees to apply the 90 calendar days between June 6, 2021, and September 3, 2021, toward the Elimination Period.").

33. In short, CNA's policy interpretation, which has been wrongfully applied not just to Plaintiffs but to all similarly situated insureds who are incurring additional unreimbursed Home

---

[1] https://homehealthcarenews.com/2019/03/home-healths-main-appeal-to-assisted-living-facilities/ (last visited Mar. 24, 2023)

9

Care Visit expenses while on claim under the ACF benefit, is inconsistent with the terms of the policies and its own conduct.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs incorporate by reference all of the preceding allegations.

35. Upon information and belief, hundreds of CNA long-term care insurance policyholders have had their Home Care Visit benefit claims denied for the same improper reason relied upon by CNA to deny Plaintiffs' claims.

36. Plaintiffs seek certification of the following two classes under Fed. R. Civ. P. 23(b)(1), (b)(2), and/or (b)(3):

   a. **Damages Class**: All CNA long-term care insurance policyholders nationwide whose policy defines a Home Convalescent Unit in the same or substantially similar manner as the P1-21295-A22 policy form and who had a Home Care Visit claim denied in whole or in part because the policyholder already was receiving benefits for their stay at an Alternate Care Facility.

   b. **Injunctive Class**: All CNA long-term care insurance policyholders nationwide whose policy defines a Home Convalescent Unit in the same or substantially similar manner as the P1-21295-A22 policy form.2

37. The Class Members are so numerous that joinder of all members is impracticable.

38. There are numerous questions of law or fact common to each Class as a whole including, but not limited to, the following:

   a. Whether the policies' definitions of ACF and Home Convalescent Unit are mutually exclusive; and

   b. Whether an insured can receive coverage for Home Care Visits subject to the Maximum Home and Adult Day Care Benefit while also receiving

---

2 Plaintiffs specifically reserve the right to amend these definitions.

facility benefits for a covered ACF stay subject to the Maximum Daily Facility Benefit.

39. The claims of Plaintiffs are typical of the claims of the Classes.

40. Plaintiffs, through their daughter and power-of-attorney holder Ms. Biagini, will fairly and adequately protect the interest of the Classes and have engaged counsel experienced in litigating long-term care coverage class actions.

41. The prosecution of separate actions by individual members of the Classes will create a risk of inconsistent or varying adjudications with respect to the individual members of the Classes, which could establish incompatible standards of conduct for Defendant.

42. Defendant has acted and is refusing to act on grounds generally applicable to the Classes as a whole, thereby making final injunctive and declaratory relief with respect to the Classes as a whole appropriate.

43. Questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

44. To that end, (1) upon information and belief, individual Class Members' interest in controlling and litigating separate actions would be low for a number of reasons including the difficulty of retaining and paying experienced counsel to litigate their claims; (2) it is highly desirable to concentrate this litigation in this particular forum so as to ensure that every member of this highly vulnerable, frail, ill, and aged population receives the policy benefits for which they paid and to which they are entitled under their policies; and (3) there likely would be little, if any, difficulties encountered in the management of this case as a class action.

## COUNT I

### Declaratory Relief under the Declaratory Judgment Act (28 U.S.C. §2201, et seq.) –

### Injunctive Class

45. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

46. Plaintiffs bring this claim for relief on behalf of themselves and the members of the Injunctive Class. An actual controversy has arisen and now exists between Plaintiffs and the members of the Injunctive Class, on the one hand, and Defendant, on the other hand, concerning their respective rights and duties in that Plaintiffs and the members of the Injunctive Class contend that Defendant is not permitted to deny claims for Home Care Visits subject to the Maximum Home and Adult Day Care Benefit just because the insured is simultaneously receiving facility benefits for a covered ACF stay subject to a separate Maximum Daily Facility Benefit.

47. A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiffs, the members of the Injunctive Class, and Defendant may ascertain their respective rights and duties with respect to Defendant's obligations to pay claims.

## COUNT II

### Breach of Contract – Damages Class

48. Plaintiffs incorporate by reference the allegations contained in all previous paragraphs of the complaint.

49. Plaintiffs bring this claim individually and on behalf of the Damages Class defined above.

50. Plaintiffs and members of the Damages Class purchased substantially similar long-term care insurance policies from Defendant and timely paid all required premiums.

51. Defendant thereby formed agreements and entered into contracts with Plaintiffs and the Damages Class members.

52. Pursuant to the contracts, Plaintiffs and the members of the Damages Class paid money to Defendant in exchange for Defendant providing long-term care insurance policy coverage to Plaintiff and the Damages Class members.

53. Defendant received premiums in exchange for its promise to pay all claims promptly and justly when all requirements under the policies have been met.

54. Plaintiffs and the members of the Damages Class performed all of their obligations under the policies. Defendant is therefore obligated pursuant to the policies, without limitation, to pay Plaintiff and the Damages Class members' valid claims.

55. Defendant breached the contracts with Plaintiffs and the Damages Class members by denying claims for Home Care Visits just because the policyholder was already receiving facility benefits for an ACF stay.

56. As the result of Defendant's breach, Plaintiffs and the Damages Class members were harmed. As such, Plaintiffs and the Damages Class members are entitled to compensatory damages, consequential damages, punitive damages, interest, attorney fees, costs, and expenses.

**Prayer for Relief**

WHEREFORE, Plaintiffs, on behalf of themselves and the Injunctive Class and Damages Class pray for judgment against CNA as follows:

1. For an Order certifying the proposed Classes under Fed. R. Civ. P. 23(b)(1), (b)(2), and/or (b)(3);

2. For the relief outlined in the Counts as enumerated above;

3. Equitable relief, including declaratory judgment and an injunction, prohibiting CNA from continuing to violate the Injunctive Class members' policies as detailed above;

4. Compensatory damages, consequential damages, punitive damages, interest, attorney fees, costs, and expenses for members of the Damages Class.

5. For such further relief as the Court deems appropriate and proper under any law, statute or equitable decree.

**DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury for all issues so triable.

Respectfully submitted,

/s/ Mark D. DeBofsky
Mark D. DeBofsky (ND Ill. 3127892)
DEBOFSKY LAW, LTD.
150 North Wacker Drive, Suite 1925
Chicago, IL 60606
Telephone: 312-561-4040
Fax: 312-600-4426
mdebofsky@debofsky.com

Sean K. Collins (ND Ill. 687158)
LAW OFFICES OF SEAN K. COLLINS
184 High Street, Suite 503
Boston , MA 02110
Telephone: 855-693-9256
Fax: 617-227-2843
sean@neinsurancelaw.com

Jeffrey S. Goldenberg (ND Ill. 0063771)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45249
Telephone: 513-345-8291
Fax: 513-345-8294
jgoldenberg@gs-legal.com

Elizabeth I. Wrobel (ND Ill. 0211755)
Wrobel & Smith, PLLP
1599 Selby Ave, Suite 105
St. Paul, MN 55104
Telephone: 651-925-6658
elizabeth@wrobelsmithlaw.com

Counsel for Plaintiffs and the Classes